IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | | |
|---|---|---|
| Nexsen Pruet, LLC, | ) | C/A No.: 3:10-895-JFA |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **ORDER** |
| | ) | |
| Westport Insurance Corporation, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

Through this action a law firm seeks a declaration of coverage under its malpractice insurance policy, and asserts claims for bad faith claims adjusting and denial of coverage. Defendant Westport Insurance Company has moved to dismiss the complaint of plaintiff Nexsen Pruet LLC, requesting that the court exercise its discretion to decline jurisdiction in favor of what it characterizes as a more comprehensive action filed in the United States District Court for the Western District of North Carolina. This matter has been fully briefed and the court heard argument at a June 17, 2010 hearing, where the court took the matter under advisement. At the June 17 hearing, Westport requested and received the opportunity to provide an additional brief on certain issues. The additional issues have now been fully briefed. After reviewing the briefs and considering the argument on this motion, the court is constrained to deny Westport's motion to dismiss in light of the first-filed rule.

I.  Background

Nexsen Pruet purchased a professional liability insurance policy (the "Policy") from Westport on June 27, 2007, and thereafter renewed the Policy for a term encompassing July

1, 2008, to July 1, 2009. The Policy was purchased from a South Carolina insurance agent and executed in South Carolina. The terms of the Policy provide for Westport to insure all losses in excess of the deductible and creates a duty on the part of Westport to defend.

On April 25, 2008, Nexsen Pruet put Westport on notice of claims arising out of the performance of residential real estate closings at a real estate development ("Grandfather Vistas") in North Carolina by William Phillip Murdock, Jr. and Allen M. Nason, then income members of Nexsen Pruet performing closings for NP Closing Network, LLC, its wholly-owned subsidiary. On December 18, 2008, a number of individuals connected to Grandfather Vistas filed suit in Mecklenburg County, North Carolina, against Constitution Law Associations, NP Closing, Nexsen Pruet, and Murdock, alleging that those defendants fraudulently induced the plaintiffs to invest in Grandfather Vistas. On March 16, 2009, two other individuals sued Murdock, Nason, Constitution Law Associates, NP Closing, and Nexsen Pruet, alleging that Murdock and Nason falsified closing documents, commingled closing funds, and improperly distributed funds to certain individuals.

In response to the notice of potential claims, Westport initiated a claims assessment with the assistance of certain Nexsen Pruet lawyers and initially agreed to provide a defense, with a general reservation of rights to deny coverage. On March 11, 2010, Westport contacted Nexsen Pruet to inform it that Wesport would be filing a lawsuit in the United States District Court of the Western District of North Carolina within two business days to determine coverage under the Policy. On March 12, 2010, Nexsen Pruet filed the present

2

action in the court of common pleas for Richland County, South Carolina, seeking a declaration of coverage under the Policy. Nexsen Pruet thereafter amended its complaint to allege claims for bad faith. On March 15, 2010, Westport filed suit against Nexsen Pruet, Murdock, and Nason in the United States District Court for the Western District of North Carolina. On April 9, 2010, Westport removed the South Carolina case to this court on the basis of diversity jurisdiction. Westport now moves to dismiss this case on the basis that: (1) it is duplicative of Westport's North Carolina action, and (2) the court should not reward Nexsen Pruet's alleged "race to the courthouse" and afford the present case first-filed status.

II. Discussion

    A. Dismissal of Duplicative Litigation

Generally, a case pending in federal court "may be dismissed 'for reasons of wise judicial administration whenever it is duplicative of a parallel action already pending in another federal court.'" Motley Rice, LLC v. Baldwin & Baldwin, LLP, 518 F. Supp. 2d 688 (D.S.C. 2007) (quoting Serlin v. Arthur Anderson & Co., 3 F.3d 221, 223 (7th Cir. 1993)) (internal alteration omitted). "Suits are parallel if substantially the same parties litigate substantially the same issues in different forums." New Beckley Min. Corp. V. Int'l Union, United Mine Workers of Am., 946 F.2d 1072, 1073 (4th Cir. 1991).

The Fourth Circuit recognizes the "first-filed" rule, which gives priority to the first suit filed absent a balance of convenience favoring the second filed. Ellicott Mach Corp. v. Modern Welding Co., Inc., 502 F.2d 178, 180 n.2, 181 (4th Cir. 1974) (finding that the first-

to-file principle is "a rule of sound judicial administration"); see also Learning Network, Inc. v. Disc. Comm., Inc., 11 Fed. App'x 297 (4th Cir. 2001) (same); Nall v. Piper, 948 F.2d 1282 (4th Cir. 1991) (unpublished) (same). The Fourth Circuit has yet to recognize a "special circumstances" exception to the first to file rule. Learning Network, 11 Fed. App'x, at *3 n.2 (stating that the Fourth Circuit has yet to recognize explicitly that special circumstances may warrant exception to the first-filed rule, but determining that a finding of no special circumstances did not constitute abuse of discretion).

Assuming, arguendo, that the two actions are "parallel and involve identical issues and claims," as the parties suggest (Mot. Dismiss 14), and that the absence of Murdock and Nason does not render the first-filed rule inapplicable on the basis of dissimilarity,[1] the court finds that the present action should be afforded first-filed status—Nexsen Pruet filed the present action on March 12, 2010, and Westport filed the rival action on March 15, 2010. Accordingly, the question before the court is whether the balance of convenience favors the rival action.

The factors a court considers in weighing the conveniences in this circumstance are essentially the same as those considered in connection with a motion to transfer venue pursuant to 28 U.S.C. § 1404(a). See, Employers Ins. of Wasau v. Fox Entm't Group, Inc., 522 F.3d 271, 275 (2d Cir. 2008); St. Paul Fire & Marine Ins. Co. v. Renne Acquisitions

---

[1] Should the absence of Murdock and Nason in the present suit render the actions sufficiently dissimilar to constitute nonparallel proceedings, the first-filed rule would have no application and the motion to dismiss on the basis of duplicative litigation would be without foundation.

4

Corp., 2010 WL 2465543 (W.D.N.C. Jun. 14, 2010). Accordingly, the court will consider: (1) the ease of access to the sources of proof; (2) the convenience of the parties and witnesses; (3) the cost of obtaining the attendance of the witnesses; (4) the availability of compulsory process; (5) the possibility of a view by the jury; (6) the interest in having local controversies decided at home; and (7) the interests of justice. Stewart Organization, Inc. v. Ricoh Corp., 487 U.S. 22, 29 (1988); see also Landers v. Dawson Const. Plant, Ltd., 201 F.3d 436 (4th Cir. 1999) (unpublished table decision). The moving party, here Westport, bears the burden of clearly establishing that these factors favor transfer. See, e.g., Citigroup v. City Holding Co., 97 F. Supp. 2d 549 (S.D.N.Y. 2000).

    1.    Ease of Access to Sources of Proof; the Convenience of the Parties and Witnesses; and the Expense of Obtaining Witness Attendance

Westport contends that the superiority of the Charlotte airport to the Columbia airport weighs in favor of the Western District of North Carolina. Nexsen Pruet argues that neither Westport nor any potential witnesses reside in North Carolina, and that all witnesses with information about whether Murdock and Nason were acting on behalf of Nexsen Pruet reside in South Carolina. Nexsen Pruet also submits that its principal place of business and policymakers all work in Columbia. After considering the briefs and especially the argument at the hearing, the court finds that Westport has failed to show that a proceeding in the Western District of North Carolina would ease access to sources of proof, prove more convenient to the parties and witnesses, or result in lesser expense.

    2.    The Interest of Having Local Controversies Decided at Home

Nexsen Pruet argues that this is a local controversy because its principal office and place of business and the majority of its members are located in South Carolina, and because the Policy was applied for and obtained in South Carolina and is governed by South Carolina law. Nexsen Pruet also submits that the interests insured and the attorneys most closely involved in the underlying dispute were and are located in South Carolina. The court agrees and finds that the interest of having controversies determined locally weighs in favor of South Carolina.

       3.       The Interests of Justice

Westport argues that the interests of justice weigh in favor of the North Carolina action because it is allegedly more comprehensive and because to permit both actions to go forward risks piecemeal litigation and contrary rulings. Nexsen Pruet argues in response that although Murdock and Nason are included in the North Carolina action, they are nether necessary nor indispensable to the present policy coverage dispute. As stated in its supplemental brief, Nexsen Pruet seeks a determination of "the discrete issues of whether coverage for Nexsen Pruet is excluded under the "Owned Business Enterprise" exclusion," and whether the Nexsen Pruet management committee knew of certain acts at certain times. (ECF No. 46 at 7.) Based on this representation by Nexsen Pruet as to the scope of this matter, it does not appear at present that the court will be required to make factual findings as to Murdock and Nason's potential liability for fraud, and risk entanglement with the state-court actions that will determine the facts in the underlying cases.

6

Because Nexsen Pruet filed its action first, and because Westport has failed to convince the court that the balance of conveniences favors North Carolina, the court will not dismiss Nexsen Pruet's complaint to avoid duplicative litigation.

B.  Dismissal of Declaratory Judgment Claim

The Federal Declaratory Judgment Act provides that district courts "may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."  28 U.S.C. § 2201.  This language has been consistently construed to give district courts discretion in deciding whether to assert jurisdiction.  Wilton v. Seven Falls Co., 515 U.S. 277, 289 (1995); Centennial Life Ins. Co. v. Poston, 88 F.3d 255 (4th Cir. 1996).  Exercising jurisdiction is appropriate "(1) when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and (2) when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." Aetna Cas. & Sur. Co. v. Quarles, 92 F.2d 321, 325 (4th Cir. 1937).  However, a court should refuse to hear a declaratory judgment action (1) where another court has jurisdiction of the issue; (2) where a proceeding involving identical issues is already pending in another tribunal; (3) where a special statutory remedy has been provided; or (4) where another remedy will be more effective or appropriate under the circumstances.  Id.  Moreover, a declaratory judgment should not be used "to try a controversy by piecemeal, or to try particular issues without settling the entire controversy, or to interfere with an action which has already been instituted." Id.  The Fourth Circuit also

requires district courts to consider "whether the declaratory judgment action is being used merely as a device for procedural fencing or to provide "another forum in a race for res judicata or to achieve a federal hearing in a case otherwise not removable." See Aetna Cas. & Sur. Co. v. Ind-Com Elec. Co., 139 F.3d 419, 422 (4th Cir. 1998) (internal punctuation and citation omitted).

Here, the parties dispute the existence of insurance coverage under a malpractice policy and each party has filed a declaratory judgment action to ascertain its rights thereunder. Accordingly, the parties appear to agree that rendering a declaratory judgment will serve a useful purpose in clarifying and settling the legal relations between them. No other court had jurisdiction over an identical action at the time this case was filed, nor is there a special statutory remedy. Westport argues that the court should decline jurisdiction because Nexsen Pruet has engaged in improper procedural fencing—that it raced to the District of South Carolina courthouse upon notice that suit was imminent in the Western District of North Carolina. However, the procedural fencing the Fourth Circuit appears concerned with in the context of declining jurisdiction in a declaratory judgment action appears related to manipulation of forum in the state-versus-federal context, rather than manipulation of federal venue. See Nautilus Ins. Co. v. Winchester Homes, Inc., 15 F.3d 371 (4th Cir. 1994) overruled on other grounds Wilton v. Seven Falls Co., 515 U.S. 277 (1995), and Ind-Com, 139 F.3d 419. And the Fourth Circuit seems to have been specifically focused on issues of comity and federalism in the face of a declaratory judgment action or procedural

8

maneuvering in the federal system while the underlying or parallel litigation proceeded in state court. Nautilus, 15 F.3d at 380 ("[W] are satisfied that this federal declaratory action is not being used merely as a device for procedural fencing. This is not a case in which a party has raced to federal court in an effort to get certain issues that are already pending before the state courts resolved first in a more favorable forum, for the issues presented in this declaratory action are not the same as those raised in the pending state court proceedings."). Those considerations cannot be said to apply when disputing what amounts to venue within the same federal system.

Here, the parties agree that a declaratory judgment action "will serve a useful purpose in clarifying and settling the legal relations in issue" and "afford relief from the uncertainty, insecurity, and controversy giving rise to the controversy." See Quarles, 92 F.2d at 324. The issue posed by the current motion to dismiss is not whether a federal court should exercise jurisdiction or not, but rather the geographic location of the district court that should hear the case. Because the court finds that a declaratory judgment action will serve the parties and that the various arguments favoring dismissal are either inapplicable or unconvincing, the court declines Westport's invitation to refuse jurisdiction.

III. Conclusion

Because Nexsen Pruet filed first, because the balance of conveniences favors the District of South Carolina, and because the court finds no convincing reason to decline jurisdiction pursuant to Quarles, 92 F.2d 321, and its progeny, the court is constrained to

9

deny Westport's motion to dismiss.

      IT IS SO ORDERED.

August 4, 2010                                       Joseph F. Anderson, Jr.
Columbia, South Carolina                 United States District Judge